1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   ROBERT GONZALES SAENZ,           CASE NO. 1:09-cv-00557-YNP PC

10                   Plaintiff,         ORDER REQUIRING PLAINTIFF EITHER TO
FILE AMENDED COMPLAINT, OR TO

11       v.                        NOTIFY COURT OF WILLINGNESS TO
PROCEED ON CLAIMS FOUND TO BE

12   ASSOCIATE WARDEN M. SPEARMAN, et  COGNIZABLE
al.,

13                            (Doc. 8)

                   Defendants.

14                            RESPONSE DUE WITHIN 30 DAYS

15   _____/

16        Plaintiff Robert Gonzales Saenz ("Plaintiff") is a state prisoner proceeding pro se and in

17   forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of

18   the California Department of Corrections and Rehabilitation and was incarcerated at Pleasant Valley

19   State Prison in Coalinga, California ("PVSP") at the time the events in his complaint took place.

20   Plaintiff is suing under section 1983 for the violation of his rights under the First, Eighth and

21   Fourteenth Amendments of the U.S. Constitution.  Plaintiff names M. Spearman, D. Reeves, C.

22   Hudson, M. Davis, and K. Marshall as defendants.  For the reasons set forth below, Plaintiff is

23   ordered to either notify the court of his willingness to proceed on the claims found to be cognizable

24   in this order, or to file an amended complaint curing the deficiencies in his claims that have been

25   identified in this order.

26   **I.**    **Screening Requirement**

27        The Court is required to screen complaints brought by prisoners seeking relief against a

28   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

## II.     Background

### A.     Procedural Background

Plaintiff filed the Original Complaint in this action on March 26, 2009. (Doc. #1.) The Court screened Plaintiff's Original Complaint on July 29, 2009. (Doc. #7.) The Court found that Plaintiff stated some cognizable claims and other non-cognizable claims and ordered Plaintiff either to notify the Court of his willingness to proceed on only the cognizable claims, or to file an amended complaint within thirty days. Plaintiff filed his First Amended Complaint on August 12, 2009. (Doc. #8.) This action proceeds on Plaintiff's First Amended Complaint.

B. **Factual Background**

Plaintiff claims that Defendants Spearman, Reeves, Hudson, Davis, and Marshall violated his constitutional rights while housed in the administrative segregation unit ("ASU") at PVSP. Plaintiff alleges that while in the ASU, his safety was placed in danger when Defendant Spearman conducted a non-confidential segregation hearing within earshot of other prisoners. Plaintiff claims Defendant Reeves fabricated a retaliatory rape charge against Plaintiff and harassed Plaintiff while he was retained in the secured housing unit ("SHU"). Plaintiff claims that Defendant Hudson improperly screened out Plaintiff's "staff/citizens complaint". Plaintiff claims that Defendant Davis retained Plaintiff in the ASU for nearly a year without following procedural rules. Finally, Plaintiff claims that Defendant Marshall made "oxymoronic" decisions regarding Plaintiff's classification score that lead to his retention in the ASU.

On August 29, 2007, Plaintiff was erroneously housed in the ASU with a documented enemy by prison officials. (Compl. ¶ 6.) The enemy was a high ranking member of the northern Mexican prison gang "Nuestra/Nueva Flor". (Compl. ¶ 8.) Plaintiff became an enemy by providing information to prison officials regarding an attack that the gang had planned to kill a police officer and his family. (Compl. ¶¶ 7-9.) On August 30, 2007, Defendant Spearman conducted a segregation hearing through Plaintiff's cell door in the presence of "non-protected" prisoners. (Compl. ¶¶ 3-4.) Plaintiff sought a confidential segregation hearing, but Spearman denied confidentiality and claims that the loud-voiced hearing would have allowed other prisoners to discover why Plaintiff was in the ASU. (Compl. ¶ 10.) Plaintiff further alleges that Spearman failed to record the reasons for denying confidentiality and Plaintiff suggests that Spearman denied confidentiality in retaliation for Plaintiff's past inmate grievances against prison staff. (Compl. ¶ 12.)

On September 14, 2007, Defendant Reeves, "in an orchestrated act without prior notice to Plaintiff", by "intimidative[sic] and coersive[sic] actions did compel inmate Abreu" to join Plaintiff in ASU cell-182 as his cellmate. (Compl. ¶ 20.) Plaintiff claims that Reeves' actions was "[a] deviation from normal standardized ASU policy." (Compl. ¶ 20.) An unnamed ASU officer ordered Plaintiff to cuff-up and Abreu then entered the cell. (Compl. ¶ 21.) The officer then instructed Plaintiff and Abreu to sign and date two "compatability[sic] consent forms", per the orders by

3

Reeves. (Compl. ¶ 21.) Plaintiff raised the issue that there was a "custodial gap" between himself and Abreu because Plaintiff was "level-2" and Abreu was "level-4". (Compl. ¶ 22.) Reeves threatened disciplinary action if Plaintiff rejected Abreu as a cell-mate. (Compl. ¶ 22.)

On September 19, 2007, Abreu sought to speak with Reeves privately. (Compl. ¶ 23.) Afterwards, Plaintiff was then escorted to a holding cage. (Compl. ¶ 23.) Reeves then approached Plaintiff's cage and accused Plaintiff of "going after officers" and raping Abreu. (Compl. ¶ 24.) Reeves indicated that the fabricated rape accusation was retaliation for filing and inmate appeals and a habeas petition while incarcerated at a different prison that resulted in correctional officers being terminated from employment. (Compl. ¶¶ 24-26.) Plaintiff was held in the holding cage for 5.5 hours without drinking water and toilet use. (Compl. ¶ 28.)

The false rape charge produced a number of reports that Plaintiff fears will lead to future prosecution. (Compl. ¶ 31.) Plaintiff was held in ASU disciplinary punishment pending DNA testing results from August 29, 2007 to August 29, 2008. (Compl. ¶¶ 32, 34.) Plaintiff complains that Spearman, Reeves, and Davis, as co-members of the ASU Institutional Classification Committee (ICC) held Plaintiff in "undue hardship, toilet use denial, work assignment denial, rehabilitative workshop(s) denial, forced to exist in a bitterly cold cell, denial of water for drinking". (Compl. ¶ 34.)

Plaintiff claims that Spearman, Reeves, and Davis collaborated in a "finely orchestrated course of action" that "forced Plaintiff to remain in the custody of ASU Sgt. Reeves". (Compl. ¶ 35.) Plaintiff complains that on December 2, 2007, an unknown ASU officer planted a weapon in Plaintiff's cell, which resulted in Plaintiff being held in a holding cage for 4.5 hours without drinking water or toilet use. (Compl. ¶ 35.D.) Plaintiff's property was also searched, a photograph destroyed, and Plaintiff was moved to another cell with "extreme cold temperatures". (Compl. ¶¶ 35.E-F.) Reeves denied Plaintiff's requests for extra clothing and blankets in his new cell. (Compl. ¶ 35.G.) On December 27, 2007 Reeves charged Plaintiff with a Rules Violation Report ("RVR") for possession of a weapon that resulted in Plaintiff losing 121 loss of credits. (Compl. ¶ 35.J.) Plaintiff filed a habeas petition regarding the false weapon possession RVR. (Compl. ¶ 35.M.)

///

On September 28, 2007, Plaintiff filed a staff/citizens complaint to the PVSP appeals coordinator's office that Defendant Hudson responded to. (Compl. ¶ 52.) Plaintiff's complaint was screened-out on October 31, 2007. (Compl. ¶ 58.) Plaintiff claims that Hudson "invented an underground rule" to screen-out Plaintiff's complaint, "the outside of the appeal process" rule. (Compl. ¶ 59.)

Plaintiff also complains that CDCR policy violates his equal protection rights because it treats Plaintiff differently from private citizens. Plaintiff alleges that non-incarcerated private citizens are given 12 month period to submit a staff complaint while prisoners are only given a 15-day period to submit a complain. (Compl. ¶¶ 72-73.)

On December 27, 2007, Plaintiff appeared before the ASU-ICC, which consisted of Defendant Davis, Spearman, and Reeves. (Compl. ¶ 81.) Plaintiff complains that Davis retained Plaintiff in ASU housing in violation of procedural safeguards that protect Plaintiff from lengthy ASU retention. (Compl. ¶ 82.) Plaintiff specifically claims that prison officials must serve prisoners with written notification of RVR charges within 15 days, with a possible 30-day extension upon a showing of good cause. (Compl. ¶ 83.) An addition 45-day extension is available where evidence is required to be delivered to a crime lab for testing. (Compl. ¶ 84.) Plaintiff was retained in the ASU for one year, thus depriving Plaintiff of rehabilitative work shops, religious services, work credit assignments, loss of behavioral credits, loss of television, radio, and telephone privileges, and other aspects of "normal" prison life. (Compl. ¶ 85.) Davis retained Plaintiff in the ASU because DNA evidence related to the fabricated rape charge had not been sent back from the lab. (Compl. ¶ 86.) Plaintiff complains that the retention in the ASU was based on "non-truths" because the DNA evidence had not been delivered to the DOJ until July 2008. (Compl. ¶¶ 89-91.) Davis had full knowledge that the DNA evidence was stored in the PVSP evidence storage unit between September 2007 to July 2008, and the delay caused Plaintiff to be held in the ASU for an extended period of time. (Compl. ¶ 92.)

Plaintiff complains that Davis' decision "resulted in more retaliation", including being moved to a cell that did not have a "working cold water button", being "intentionally passed" by Officer Lee when Lee was distributing milk, fruit, juice and coffee, and being pushed into his cell and unto a

1  concrete table by Lee. (Compl. ¶ 97.) Plaintiff also complains that ASU library officer Holiday and

2  ASU property officer Singleton attempted to intimidate Plaintiff into halting his inmate grievances

3  and lawsuits by threatening to mishandle his legal mail, deny law library access, deny photocopy

4  services, and damaging Plaintiff's personal property. (Compl. ¶ 97.F.)

5       Plaintiff alleges that Davis is the "hiring authority for the purpose of reviewing staff/citizens'

6  complaints" and is responsible for "assigning the complaints to the appropriate investigators".

7  (Compl. ¶ 98.) Thus, Plaintiff concludes that Davis was aware of all of Plaintiff's inmate grievances,

8  and was therefore aware of the cruel and unusual conditions of his ASU cell, including the cold

9  temperatures, the lack of sufficient blankets and clothing, and the denial of toilet use and drinking

10  water. (Compl. ¶ 99.)

11       On May 20, 2008, Defendant Marshall conducted an interview with Plaintiff and gave

12  Plaintiff two documents, a "reclassification form" and a "segregation order form". (Compl. ¶ 104.)

13  Plaintiff alleges that his "classification score" prior to the interview was 25 points. (Compl. ¶ 107.)

14  Plaintiff's score was raised by two points because Plaintiff was issued an RVR for the weapon

15  planted by other correctional officers. (Compl. ¶ 108.) Plaintiff was also told that the 11 months

16  of punishment are completed for the alleged rape. (Compl. ¶ 109.) However, Plaintiff would not

17  receive two points in his classification score because the RVR for the rape was not served. (Compl.

18  ¶ 109.) Plaintiff complained that it did not make sense that Plaintiff had to serve 11 months of

19  punishment while at the same time Marshall recognized the illegitimacy of the RVR by not adding

20  two points to his classification score. (Compl. ¶ 109.)

21  **III.    Discussion**

22       **A.    Threat to Safety Claims**

23       Plaintiff claims that Defendant Spearman conducted a segregation hearing in front of

24  Plaintiff's cell. Plaintiff alleges that the public nature of the hearing would have placed Plaintiff at

25  risk because other inmates could have learned information that would place Plaintiff's life in danger.

26  Plaintiff further alleges that Spearman deliberately conducted the hearing in this manner in retaliation

27  for Plaintiff's prior grievances and lawsuits.

28  ///

1                    **1.    Eighth Amendment Claim**

2    Plaintiff claims that Defendant Spearman deliberately exposed Plaintiff to a threat to his

3    safety in violation of his rights under the Eighth Amendment. The Eighth Amendment prohibits the

4    imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of

5    dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976)

6    (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth

7    Amendment only when two requirements are met: (1) the objective requirement that the deprivation

8    is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501

9    U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently

10   culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the

11   deprivation be "sufficiently serious" is met where the prison official's act or omission results in the

12   denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452

13   U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently

14   culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate

15   health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate

16   indifference when he/she "knows of and disregards an excessive risk to inmate health or safety".

17   Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that

18   a substantial risk of serious harm exists, and he must also draw the inference." Id.

19   Plaintiff claims that Defendant Spearman violated Plaintiff's Eighth Amendment rights by

20   exposing Plaintiff to an excessive risk of harm by conducting a segregation hearing in the presence

21   of other prisoners. Specifically, Plaintiff has not alleged that he was ever attacked or targeted by

22   prisoners who overheard the contents of the segregation hearing. Plaintiff alleges that the "loud

23   voiced hearing would have made known to all prisoners the reason for ASU placement. Plaintiff

24   would then be a target to both protected and non-protected prisoners." (Compl. ¶ 10) (emphasis

25   added). Plaintiff has not alleged that any sensitive information that would have placed his life in

26   danger was actually discussed at the segregation hearing, or that any prisoners overheard the

27   segregation hearing. It is not clear what danger, if any, Plaintiff was placed in as a result of the

28   segregation hearing. Plaintiff fails to state a cognizable claim against Defendant Spearman for

7

violation of the Eighth Amendment.  Plaintiff will be given the option to amend his Eighth Amendment claim against Defendant Spearman to cure the deficiencies identified above.

### 2.  First Amendment Retaliation Claim

Plaintiff claims the Defendant Spearman deliberately exposed Plaintiff to a threat to his safety in retaliation for grievances and lawsuits Plaintiff had previously filed.  In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff has alleged that Spearman conducted a non-confidential segregation hearing because of Plaintiff's protected conduct in filing inmate grievances and lawsuits.  However, as discussed above, it is unclear whether Plaintiff's safety was placed in danger as a result of the segregation hearing.  See discussion supra Part III.A.1.  If Plaintiff was not placed in danger, Plaintiff has not suffered from any significant "adverse action".  Plaintiff fails to state a cognizable claim for retaliation against Defendant Spearman.  Plaintiff will be given the option to amend his retaliation claim against Defendant Spearman to cure the deficiencies identified above.

### 3.  Fourteenth Amendment Due Process Claim

Plaintiff claims that Defendant Spearman's actions also violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.  The right claimed, namely the right to not be exposed to an unnecessary risk of excessive harm, is a right that is specifically protected by the Eighth Amendment.  The right to not be retaliated against for filing inmate grievances and lawsuits is protected by the First Amendment.  "[W]here a particular amendment provides an explicit textual

1  source of constitutional protection against a particular sort of government behavior, that

2  Amendment, not the more generalized notion of substantive due process, must be the guide for

3  analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations,

4  internal quotations, and brackets omitted).  Thus, Plaintiff's claim is more appropriately construed

5  as arising under the First and Eighth Amendments, not the Due Process Clause.

6  **B.  Inmate Grievance Claims**

7  Plaintiff alleges that Defendant Hudson violated his constitutional rights in the manner in

8  which he processed Plaintiff's inmate grievances.  Plaintiff claims that Defendant Hudson's actions

9  in screening out Plaintiff's inmate grievance violated his right to free speech under the First

10  Amendment, his due process rights under the Fourteenth Amendment, and his equal protection rights

11  under the Fourteenth Amendment.

12  **1.  First Amendment Free Speech Claim**

13  Plaintiff claims that Defendant Hudson chilled Plaintiff's exercise of his free speech rights

14  under the First Amendment by screening out Plaintiff's inmate grievance.  "[A] prisoner inmate

15  retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner

16  or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S.

17  817, 822 (1974).  A regulation that impinges on First Amendment rights "is valid if it is reasonably

18  related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).  Under this

19  standard, four factors are relevant: (1) there must be a valid rational connection between the prison

20  regulation and the legitimate and neutral governmental interest put forward to justify it; (2) whether

21  there are alternative means of exercising the right available to inmates; (2) what impact the

22  accommodation of the asserted constitutional right would have on guards and other inmates; and (4)

23  the allocation of prison resources generally and the absence of ready alternatives available to the

24  prison for achieving the governmental objectives.  Shaw v. Murphy, 532 U.S. 223, 229-30 (2001).

25  Plaintiff's First Amendment claim against Defendant Hudson lacks merit.  Plaintiff has a

26  right under the First Amendment to file prison grievances. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th

27  Cir. 2003).  However the right to free speech does not guarantee that anybody will listen to Plaintiff's

28  speech, thus Hudson's actions in screening-out Plaintiff's grievance does not violate Plaintiff's free

speech rights. The right to free speech guaranteed by the First Amendment does not compel Hudson to process Plaintiff's grievance.

Plaintiff alleges that the screening out of his grievance "chilled" his exercise of his First Amendment rights. Thus, Plaintiff claims that Hudson interfered with his future exercise of his First Amendment rights. However, in order to constitute a First Amendment violation, Plaintiff must allege action by Defendant Hudson that "'would chill or silence a person of ordinary firmness from future First Amendment activities'". Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996)). A single instance of screening-out a prison grievance cannot be said to be so severe as to chill a person of ordinary firmness from filing grievances in the future. Hudson's actions did not prevent Plaintiff from filing his grievance, or interfere with Plaintiff's ability to file future grievances. Further, Plaintiff also possesses adequate alternative avenues for petitioning the government, such as by filing suit in court. Plaintiff fails to state a cognizable claim against Defendant Hudson for interfering with his First Amendment free speech rights.

Plaintiff has been previously informed about the deficiencies in his First Amendment claim against Defendant Hudson. (Order Requiring Pl. Either To File Am. Compl. Or To Notify Ct. Of Willingness To Proceed Only On Claims Found To Be Cognizable 5:18-6:2, July 29, 2009.) Plaintiff has not amended his claim in any way that meaningfully addresses the deficiencies that were previously identified by the Court. Plaintiff's First Amendment claim against Defendant Hudson will be dismissed herein without leave to amend.

## 2.   Fourteenth Amendment Due Process Claim

Plaintiff claims that Defendant Hudson's actions in screening out his inmate grievance violated Plaintiff's due process rights. Plaintiff complains that Hudson violated his due process rights because he failed to follow California statutes and CDCR regulations governing the processing of inmate grievances. Plaintiff alleges that the "outside of the appeal process" justification was an "underground rule".

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action

1  for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for

2  which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or

3  from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  Liberty interests created by state law

4  are generally limited to freedom from restraint which "imposes atypical and significant hardship on

5  the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484

6  (1995).

7          In order to state a due process claim, Plaintiff must identify a protected liberty interest that

8  he was deprived of.  A deviation from state statutes or prison regulations is not a constitutional

9  violation if the deviation only results in minor inconvenience.  Here, Hudson's actions in screening

10  out Plaintiff's grievance caused Plaintiff to be deprived of access to the inmate grievance process.

11  However, inmates have no liberty interest in the processing of an inmate appeal because inmates lack

12  a separate constitutional entitlement to a specific prison grievance procedure.  Ramirez v. Galaza,

13  334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  The

14  deprivation of access to the prison grievance process is not an "atypical and significant hardship on

15  the inmate in relation to the ordinary incidents of prison life."  Plaintiff has no protected liberty

16  interest in the vindication of his administrative claims.  Plaintiff's argument that screening out his

17  complaint results in Plaintiff being "prohibited from seeking federal and state application(s) of

18  habeas corpus writ and civil complaints" is without merit.  If Plaintiff complied with all the

19  procedural requirements in attempting to exhaust his administrative remedies, he is not prohibited

20  from challenging Defendants' conduct through a writ of habeas corpus or a civil rights action.

21          Further, it is unclear how Hudson failed to follow California statutes or prison regulations.

22  Plaintiff complains "the outside of the appeal process" is an "underground rule" and that the

23  regulations governing the processing of inmate grievances "does not provide for a complaint to be

24  processed outside the appeal process".  Plaintiff does not allege how his grievance was "processed

25  outside the appeal process".  The more plausible meaning of screening out an appeal as "outside of

26  the appeal process" would be that the conduct complained of in Plaintiff's grievance is beyond what

27  the appeal process is designed to address.  The Court can conjecture that complaining about the

28  validity of an RVR through the inmate grievance process is "outside the appeal process" because

such challenges are more appropriately raised at the disciplinary hearing for the RVR.  In all likelihood, the "outside of the appeal process" rule is probably meant to prevent duplicative proceedings addressing the same issue (the grievance proceeding and the RVR hearing) with the possibility of conflicting outcomes.  Conjectures aside, Plaintiff has not identified any valid liberty interests that he was deprived of and his complaints about the processing of his grievance are poorly articulated.  Plaintiff fails to state a cognizable claim against Defendant Hudson for violation of the Due Process Clause.

Plaintiff has been previously informed about the deficiencies in his due process claim against Defendant Hudson.  (Order Req. Pl. To File Am. Compl. 11:22-12:4, July 29, 2009.)  Plaintiff has not amended his claim in any way that meaningfully addresses the deficiencies that were previously identified by the Court.  Plaintiff's due process claim against Defendant Hudson will be dismissed herein without leave to amend.

### 3. Fourteenth Amendment Equal Protection Claim

Plaintiff claims that the processing of his inmate grievances violated his equal protection rights because prisoners are given less time to file grievances than non-incarcerated "private persons".  Plaintiff alleges that CDCR policy requires prisoners to submit a "staff/citizens complaint" within 15 days, while "private persons" receive 12 months to submit a "staff/citizens complaint".  The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).  If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development

Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.2002).  To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  Village of Willowbrook, 528 U.S. at 564.

The Court's best interpretation of Plaintiff's equal protection theory is that Plaintiff claims that (1) Plaintiff is a member of an identifiable class, namely incarcerated prisoners.  Plaintiff further alleges that (2) as an incarcerated prisoner, he was intentionally treated differently from others similarly situated ("private persons") because incarcerated prisoners only have 15 days to file grievances whereas non-incarcerated "private persons" have 12 months to file grievances.  Plaintiff finally claims that (3) there is no rational basis for the difference in treatment.

Plaintiff's equal protection claim is wholly frivolous.  The contention that Plaintiff, an incarcerated prisoner, is similarly situated to non-incarcerated "private persons" is questionable – to say the least.  Plaintiff's claim that the constitution requires that he, a prisoner, be treated the same as a free (non-incarcerated) person is simply without merit.  Thus, Plaintiff fails to state a cognizable claim for the violation of his rights under the Equal Protection Clause.  The Court finds that Plaintiff's equal protection claims are not capable of being cured by amendment.  Plaintiff's equal protection claim against Defendant Hudson will be dismissed herein without leave to amend.

## C.   ASU Confinement Claims

Plaintiff claims that his confinement in the ASU violated his constitutional rights.  Plaintiff claims that his confinement in the ASU violated his due process rights because he was retained in the ASU based on a false rape charge.  Plaintiff also claims that his confinement in the ASU constituted retaliation against his exercise of his First Amendment rights and that the conditions within the ASU constituted cruel and unusual punishment in violation of the Eighth Amendment.

### 1.   Fourteenth Amendment Due Process Claims

Plaintiff claims that his confinement in the ASU violated his due process rights because he has a protected liberty interest in avoiding transfer to the ASU.  Plaintiff complains that the ASU had more restrictive conditions of confinement compared to placement in the general population.

1   Plaintiff complains that he did not have access to rehabilitative work shops, religious services, or

2   work credit assignments.  Plaintiff also lost access to television, radio, and telephones.  Plaintiff

3   alleges that he was held in the ASU because prison officials fabricated a rape charge against him.

4   Plaintiff also alleges that prison officials deliberately extended the duration of Plaintiff's

5   confinement by failing to serve him with a copy of his RVR and delaying the processing of the DNA

6   evidence related to the rape charge.  While Plaintiff has alleged improper conduct by Defendants,

7   such conduct does not become a Constitutional violation unless Plaintiff suffered serious enough

8   injury to constitute the loss of a protected liberty interest.

9       Plaintiff alleges that ICC members (Defendants Spearman, Reeves, and Davis) violated his

10  due process rights by depriving Plaintiff of his liberty interest in avoiding ASU confinement.

11  Plaintiff further alleges that he was not given adequate process because his confinement was based

12  on false charges and prison officials deliberately delayed the processing of DNA evidence that would

13  have exculpated him in order to retain him in the ASU for a longer period of time.

14      Plaintiff provides unclear allegations supporting his due process claims.  Plaintiff alleges in

15  his claims against Defendant Spearman that he was housed in the ASU on August 29, 2007.  Plaintiff

16  provided information to prison officials to prevent a prison gang from carrying out the murder of a

17  police officer and his family.  Plaintiff complains that if other prisoners discovered "the reason for

18  ASU placement, Plaintiff would then be a target."  (Compl. ¶ 10.)  Plaintiff thus implies that the

19  reason for ASU placement was because he provided information preventing a prison gang from

20  committing a homicide.

21      Plaintiff then later alleges that he was held in the ASU from August 29, 2007 through August

22  29, 2008 in violation of due process because he was not afforded "codified and CDCR mandated

23  safe-guards pertaining to disciplinary procedures."  (Compl. ¶ 34.)  Plaintiff thus re-characterizes

24  "the reason for ASU placement" to be because of the false rape charge and lack of "safe-guards

25  pertaining to disciplinary procedures".  Plaintiff's re-characterization is further inconsistent with his

26  allegation that he was falsely charged with rape on September 19, 2007. (Compl. ¶¶ 23-31.)  Thus

27  Plaintiff had already been housed in the ASU from August 29, 2007 to September 19, 2007 – before

28  he was falsely charged with rape.  If Plaintiff was already housed in the ASU when he was falsely

charged with rape, it is unclear how Plaintiff can conclude that he was unconstitutionally housed in the ASU because of lack of procedural/disciplinary safeguards related to the false rape charge.  It is further unclear how Plaintiff can simultaneously allege that he was housed in the ASU because of information he provided about a prison gang's homicide plans to support one claim and then claim he was housed in the ASU because of a false and retaliatory rape charge to support a separate claim. Conceivably, Plaintiff's retention in the ASU may have been extended due to the false rape charge. For example, Plaintiff could have alleged that the danger from providing information about the prison gang homicide plot had subsided and he should have been released from the ASU earlier, but was retained longer because of the false rape charge.  Plaintiff has not made these allegations and the Court will not presume them.

Further, even assuming that Plaintiff's ASU retention was extended due to the false rape charge, Plaintiff does not have a protected liberty interest in avoiding ASU retention.  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).  Thus, if Plaintiff does possess a protected liberty interest in avoiding ASU confinement, it must arise from state law. Sandin held that prisoners have no state-created liberty interest in avoiding placement in disciplinary segregation for 30 days because segregated confinement did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." Sandin, 515 U.S. at 484.

"[A]dministrative segregation falls within the terms of confinement ordinarily contemplated by a sentence." May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (citing Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986)).  "Neither the degree nor the duration of the restraint imposed by administrative segregation gives rise to a protected liberty interest.  Although, clearly, a reduction in the level of [a prisoner's] privileges would be unpleasant . . . the Court cannot conclude that the restrictions on [a prisoner's] . . . privileges amounted to a major disruption in his environment."  Bryant v. Cortez, 536 F. Supp. 2d 1160, 1167 (C.D. Cal. 2008) (finding that conditions in ASU restricting exercise, shower, hygiene, visitation, work, educational, and telephone privileges did not give rise to a protected liberty interest).

1    The conditions in the ASU alleged by Plaintiff are not severe enough to constitute a

2  deprivation of Plaintiff's liberty interests.  Plaintiff has failed to allege that he holds a liberty interest

3  in avoiding ASU confinement and Plaintiff fails to allege a cognizable claim for violation of his due

4  process rights.  Although ASU placements generally do not rise to the level of due process

5  violations, Plaintiff is protected from harassing or retaliatory ASU placements elsewhere in the

6  Constitution.  The Court has construed Plaintiff's allegations to state cognizable claims under the

7  First and Eighth Amendments of the Constitution.  See discussion infra Parts III.C2, 3 (finding

8  Plaintiff provides sufficient allegations to state claim for retaliation and cruel and unusual

9  punishment).  However, Plaintiff fails to state any claims against the members of the ICC committee

10  (Spearman, Reeves, and Davis) for violating Plaintiff's due process rights by their actions in

11  retaining Plaintiff in the ASU.  Plaintiff will be given the option to amend his due process claims

12  against Defendants Spearman, Reeves, and Davis to cure the deficiencies identified above.

13    **2.    First Amendment Retaliation Claims**

14    Plaintiff alleges that Defendants Reeves, Spearman and Davis retaliated against him for

15  exercising his constitutionally protected right to file prison grievances by fabricating false rape

16  charges against him and retaining him in the ASU.  Plaintiff alleges that Defendant Reeves fabricated

17  a rape charge against Plaintiff which may have resulted in Plaintiff being housed in the ASU and

18  deprived of various privileges, see discussion supra Part III.C.1.  Plaintiff's allegation that he was

19  falsely charged is sufficient to state a claim for retaliation in violation of the First Amendment.  See

20  Austin v. Terhune, 367 F.3d 1167, 1170-71 (9th Cir. 2004) (holding that placement in administrative

21  segregation in retaliation for filing inmate grievances sufficient to support a retaliation claim under

22  the First Amendment).  Plaintiff states a cognizable claim against Defendant Reeves for retaliating

23  against Plaintiff's exercise of his right to file inmate grievances under the First Amendment.

24  ///

25    Although Plaintiff also alleges that Defendants Spearman and Davis acted with retaliatory

26  motive, it is unclear what adverse action they took against Plaintiff.  Spearman and Davis were ICC

27  members at the meetings where Plaintiff's ASU retention was extended.  However, as discussed

28  above, Plaintiff provides conflicting allegations as to whether the reasons for his ASU retention was

to protect him from the gang that Plaintiff provided information to prison officials against, or if he was retained in the ASU because of the false rape charge.  Plaintiff also complains that he was held in "undue hardship" because of Spearman and Davis' actions.  However, Plaintiff provides no allegations linking Spearman and Davis to the complained hardship, such as the toilet use denial, the bitterly cold cell, the unknown ASU officer planting a weapon in Plaintiff's cell, or Officer Lee's harassment of Plaintiff.  Plaintiff does not allege that Spearman and Davis ordered the harassment, had knowledge that the harassment would occur and did not prevent it, or were otherwise directly involved in the commission of the of harassment.  Spearman and Davis' actions in retaining Plaintiff in the ASU do not make them liable for the independent acts of harassment committed by other prison staff while Plaintiff was housed in the ASU.  Plaintiff fails to state any cognizable claims for retaliation against Defendants Spearman and Davis.  Plaintiff will be given the option to amend his retaliation claims against Defendants Spearman and Davis to cure the deficiencies identified above.

### 3.    Eighth Amendment Claims

Plaintiff claims that the conditions of his confinement in the ASU violated his rights under the Eighth Amendment.  Plaintiff claims that the harsh conditions of confinement in the ASU violated the Cruel and Unusual Punishments Clause of the Eighth Amendment.  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).

Plaintiff faced unconstitutional conditions of confinement because he was deprived of water and toilet use for extended periods of time, and was denied requests for adequate clothing and blankets when he was housed in a bitterly cold cell.  Plaintiff therefore states sufficient facts to support an Eighth Amendment claim against those Defendants who caused Plaintiff to endure the unconstitutional conditions through their deliberate indifference.  Plaintiff states that Reeves was aware of the unconstitutional conditions of confinement and was deliberately indifferent by denying Plaintiff's requests for sufficient clothing and blankets.  Plaintiff also alleges that Reeves held Plaintiff for up to 5.5 hours without access to drinking water or the bathroom.  Plaintiff states a

1    cognizable claim against Defendant Reeves for unconstitutional conditions of confinement.

2         Plaintiff alleges that Davis was "fully aware of the acts of cruelties imposed on Plaintiff".

3    (Compl. ¶ 99.)  Plaintiff claims that Davis was aware because he was "the hiring authority for the

4    purpose of reviewing staff/citizens' complaints and assigning the complaints to the appropriate

5    investigators".  (Compl. ¶ 98.)  Plaintiff claims that "in this mode Davis becomes aware of each of

6    Plaintiff's complaints."  (Compl. ¶ 98.)  Plaintiff's conclusion that Davis was aware of the "acts of

7    cruelties imposed on Plaintiff" is tenuous, given that is dubious that Davis becomes aware of the

8    contents of every inmate grievance through his position as the "hiring authority" and assigning

9    complaints to the appropriate investigators.  Even accepting Plaintiff's allegation as true, Plaintiff

10   has not alleged that Davis was made aware of the "acts of cruelty" in time to have a fair opportunity

11   to prevent them.  Davis is not liable for the "acts of cruelty" committed by others if he was made

12   aware of them after they had occurred and therefore did not have a fair opportunity to prevent them.

13   Plaintiff fails to state a claim against Defendant Davis for violation of the Eighth Amendment.

14   Plaintiff will be given the option to amend his Eighth Amendment claims against Defendant Davis

15   to cure the deficiencies identified above.

16        **D.    Claims Against Defendant Marshall**

17        Plaintiff claims that Defendant Marshall violated his due process rights.  Plaintiff's claim

18   against Defendant Marshall is unclear.  Plaintiff alleges that Marshall conducted an interview with

19   Plaintiff about his classification score.  Plaintiff's classification score prior to the interview was 25,

20   which corresponded to the Level-2 custody level (19-27 points).  Prisoners may be given an

21   additional 2 classification points for each disciplinary action.  Plaintiff received two additional

22   classification points because of the RVR stemming from the planted weapon.  Plaintiff was also told

23   that "the (11) months of punishment are completed . . . for the alleged rape".  (Compl. ¶ 109.)

24   Plaintiff complains that he was forced to complete the punishment that would have been imposed

25   if the the testing of the DNA evidence was completed.  Plaintiff also appears to complain that

26   Marshall told Plaintiff that he cannot add two points to his classification score for the fabricated rape

27   charge because the RVR had not been served.  Plaintiff complains that the situation was

28   "oxymoronic" because he had to serve the 11 months of punishment for an RVR that was not served,

yet the prison recognized that it could not add two points to his classification score.  Plaintiff alleges that the 2 classification points that were intentionally omitted would have raised Plaintiff to Level-3 custody status and "was decisive of whether Plaintiff qualifies for ASU release."  (Compl. ¶ 112.)

### 1.    Fourteenth Amendment Due Process Claim

It is not clear what Defendant Marshall did to violate Plaintiff's due process rights.  Plaintiff complains that Marshall "soiled the procedural safeguards when his oxymoronic decision to 'lie' caused Plaintiff to suffer".  (Compl. ¶ 122.)  It is not clear what Marshall lied about.  Plaintiff appears to be complaining that Marshall should have added 2 classification points from the false rape RVR.  It is not clear to the Court why Plaintiff wants his classification score to be increased, nor is it clear why Plaintiff is on one hand complaining that the rape RVR was false, while on the other hand complaining that he should be assessed 2 classification points for a false rape RVR. Plaintiff complains that the system is "oxymoronic".  However, the contradictory nature of the prison's policy with respect to the rape RVR is not sufficient to make it a constitutional violation.

Alternatively, Plaintiff may be complaining that had he been assessed the two additional classification points, he would have been classified as Level-3 and would have been released from the ASU.  That claim fails to rise to the level of a constitutional violation because Plaintiff does not possess a liberty interest in avoiding retention in the ASU, see discussion supra Part III.C.1, nor has Plaintiff alleged any facts that suggest that he possesses a protected liberty interest in a particular classification score.  Plaintiff has not alleged that the difference in classification score resulted in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life". Plaintiff fails to state a claim against Defendant Marshall for violation of his due process rights. Plaintiff will be given the option to amend his due process claim against Defendant Marshall to cure the deficiencies identified above.

///

### 2.    Eighth Amendment Claim

Plaintiff claims that Marshall violated Plaintiff's Eighth Amendment rights because he "opted to provide more time and opportunity for acts of cruelties."  (Compl. ¶ 119.)  Plaintiff fails to link Marshall in any significant way to the "acts of cruelties".  Plaintiff does not allege that

1  Marshall ordered other prison officials to commit "acts of cruelties", or that Marshall had knowledge

2  of the "acts of cruelties", had the opportunity to prevent them, and failed to.  Nor does Plaintiff

3  allege that Marshall acted with deliberate indifference by having actual knowledge of the conditions

4  in the ASU.  The mere fact that Marshall could have theoretically prevented the "acts of cruelties"

5  from occurring by arranging for Plaintiff's release from the ASU is not sufficient to hold him

6  culpable for "acts of cruelties" committed by other prison officials.  Plaintiff fails to state a claim

7  against Defendant Marshall for violation of the Eighth Amendment.

8  Plaintiff has been previously informed about the deficiencies in his Eighth Amendment claim

9  against Defendant Marshall.  (Order Req. Pl. To File Am. Compl. 10:6-12, July 29, 2009.)  Plaintiff

10  has not amended his claim in any way that meaningfully addresses the deficiencies that were

11  previously identified by the Court.  Plaintiff's Eighth Amendment claim against Defendant Marshall

12  will be dismissed herein without leave to amend.

13  **IV.    Conclusion and Order**

14  Plaintiff's First Amended Complaint states cognizable claims against Defendant Reeves for

15  retaliating against Plaintiff's exercise of his First Amendment rights and for violating the Cruel and

16  Unusual Punishments Clause of the Eighth Amendment.  Plaintiff's First Amended Complaint fails

17  to state any other claims against any other defendants.

18  Plaintiff was previously informed of the deficiencies in his First and Fourteenth Amendment

19  claims against Defendant Hudson and his Eighth Amendment claim against Defendant Marshall.

20  Plaintiff has not amended these claims in any way that meaningfully addresses the deficiencies

21  previously identified by the Court.  These claims will be dismissed without further leave to amend.

22  Any attempt to amend these claims will result in Plaintiff's complaint being dismissed for failing

23  to obey a court order.

24  ///

25  For Plaintiff's other non-cognizable claims, the Court will provide Plaintiff with the

26  opportunity to file a Second Amended Complaint curing the deficiencies identified by the Court in

27  this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the

28  nature of this suit by adding new, unrelated claims in his Second Amended Complaint.  George v.

20

1   Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

2       If Plaintiff does not wish to file a Second Amended Complaint and is agreeable to proceeding

3   only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing,

4   and the Court will issue a recommendation for dismissal of the other claims and defendants, and will

5   forward Plaintiff one (1) summons and one (1) USM-285 forms for completion and return.  Upon

6   receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

7       If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a).

8   Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's

9   constitutional or other federal rights: "The inquiry into causation must be individualized and focus

10   on the duties and responsibilities of each individual defendant whose acts or omissions are alleged

11   to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

12   With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P.

13   10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other

14   words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's

15   complaint because at this stage Plaintiff's factual allegations will be accepted as true.

16       Although Plaintiff's factual allegations will be accepted as true and that "the pleading

17   standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain

18   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

19   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

20   544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

21   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

22   alleged."  Id. (citing Twombly, 550 U.S. at 556).

23       Finally, Plaintiff is advised that an amended complaint supercedes the original complaint.

24   Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

25   (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior

26   or superceded pleading."  Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged

27   in an original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d

28   at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth,

114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.    Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

a.    File a Second Amended Complaint curing the deficiencies identified by the Court in this order, or

b.    Notify the Court in writing that he does not wish to file a Second Amended Complaint and wishes to proceed only against Defendant Reeves for violations of the First and Eighth Amendments; and

3.    If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.


IT IS SO ORDERED.

**Dated:**    **September 30, 2009**                    **/s/ Gary S. Austin**
                                                 UNITED STATES MAGISTRATE JUDGE