# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ROBERT GONZALES SAENZ,

               Plaintiff,

   v.

SGT. D. REEVES,

               Defendant.

_____/

CASE NO. 1:09-cv-00557-BAM PC

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF Nos. 74, 82-86, 87, 90)

ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANT REEVES DECLARATION (ECF Nos. 79, 80)

## I.    Background

Plaintiff Robert Gonzales Saenz ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983, filed this action on March 26, 2009. On September 28, 2010, the screening order issued, and this action is proceeding on the second amended complaint against Defendant Reeves for fabricating disciplinary charges against Plaintiff in retaliation for his filing grievances in violation of the First Amendment and deliberate indifference by placing Plaintiff in a holding cell without drinking water and a toilet and denying access to blankets and extra clothing in violation of the Eighth Amendment.[1]  (ECF No. 16.)  The parties have consented to the jurisdiction of the Magistrate Judge.  (ECF Nos. 5, 56.)  On January 31, 2012, Defendant filed a motion for summary judgment.  (ECF No. 74.)  Plaintiff filed a motion to strike Defendant Reeves' declaration as unauthenicated on January 31, 2012.  (ECF No. 79.)  On February 3, 2012, Defendant Reeves filed an opposition to the motion to strike the declaration as

_____

[1]On September 28, 2010, an order issued dismissing the remaining claims in Plaintiff's second amended complaint.  (ECF No. 16.)

1

1   unauthenticated. (ECF No. 80.) Plaintiff filed an opposition to the motion for summary judgment,

2   declaration in support of his opposition, statement of undisputed facts, statement of disputed facts,

3   response to undisputed facts, and deposition transcript.[2] (ECF Nos. 82-87.) On April 17, 2012, after

4   receiving an extension of time, Defendant filed a reply.  (ECF No. 90.)

5   **II.    Motion to Strike Defendant Reeves' Declaration as Unauthenticated**

6       Plaintiff moves to have Defendant Reeves' declaration, submitted in support of the motion

7   for summary judgment, stricken from the record as he asserts that it is unsigned and unauthenticated.

8   (Motion to Strike Defendant Reeves' Declaration 2-3,[3] ECF No. 79.)  Plaintiff argues that defense

9   counsel is attempting to circumvent clearly established rules and commit an intentional violation of

10  the rules. (Id. at 3.)  Defendant opposes the motion on the ground that the declaration was submitted

11  with the digital signature of Defendant Reeves, and includes a copy of the document with Defendant

12  Reeves' original signature.  (Opposition 1-2, ECF No. 80; Declaration of Defendant Reeves 4, ECF

13  No. 80-1.)

14      The declaration submitted with the motion for summary judgment is signed "/s/ 'D. Reeves'

15  (original signature retained by counsel)."  Local Rule 131(f) specifically allows for a party's non-

16  electronic signature and the document submitted complies with the requirements of this rule.

17  Plaintiff's motion to strike the declaration of Defendant Reeves is denied.

18  **III.   Defendant's Motion for Summary Judgment**

19      **A.    Motion for Summary Judgment Legal Standard**

20      Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

21  it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party

22

23          [2]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment in
24  Defendant's motion for summary judgment.  Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012); Klingele v.
    Eikenberry, 849 F.2d 409 (9th Cir. 1988).

25          In his opposition, Plaintiff attempts to raise new claims and claims that were dismissed in the order issued
26  September 28, 2010.  (ECF No. 16.)  Plaintiff may not now expand the scope of this litigation via his opposition to
    Defendant's motion for summary judgment.  See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th
27  Cir. 2004).  Plaintiff's claims are confined to those screened and found cognizable by the Court.

28          [3]All references to pagination of specific documents pertain to those as indicated on the upper right corners
    via the CM/ECF electronic court docketing system.

is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

### B.    Relevant Allegations in Second Amended Complaint

On September 14, 2007, Plaintiff was housed with inmate Abreau in the Administrative Housing Unit ("ASU").  (Sec. Am. Compl. ¶ 23, ECF No. 14.)  Plaintiff objected to being housed with inmate Abreau because there was a difference in their custodial level and forced compatibility was improper.  Defendant Reeves threatened disciplinary action if Plaintiff rejected inmate Abreau as a cell mate.  (Id. at ¶ 25.)  On September 19, 2007, inmate Abreau asked to speak with Defendant

3

Reeves and was subsequently taken to a holding cell. (Id. at ¶ 26.) Plaintiff alleges that Defendant Reeves then approached him and stated that he knew why Plaintiff had been transferred from California Substance Abuse Treatment Facility, and that Plaintiff had filed complaints against officers at Salinas Valley State Prison ("SVSP"). Defendant Reeves accused Plaintiff of raping his cell mate and told him that he was going to make sure he got time for it, and give him trouble as long as he was at Pleasant Valley State Prison ("PVSP"). (Id. at ¶ 27.) Defendant Reeves threatened bodily harm to Plaintiff. (Id. at ¶ 29.)

Plaintiff was housed in a three by three foot cage without a toilet and drinking water for approximately five and one half hours. (Id. at ¶ 31.) Plaintiff was transferred to Fresno Community Hospital at approximately 12:40 p.m. for a forensic examination. He was not allowed to use the toilet until 4:00 p.m. (Id. at ¶ 32.) Plaintiff alleges that Defendant Reeves and inmate Abreau fabricated the rape charge against Plaintiff. (Id. at ¶ 33.) Plaintiff was held in the ASU for the purpose of receiving Department of Justice ("DOJ") test results. (Id. at ¶ 35.) The DOJ test results came back negative for any evidence that Plaintiff had raped inmate Abreau. (Id. at ¶ 44.) The rule violation was dismissed on July 10, 2009, citing numerous due process violations. (Id. at ¶ 47.) Defendant Reeves was aware that inmate Abreau had previously made a false rape accusation against an inmate. (Id. at ¶ 50.)

Plaintiff alleges that on December 2, 2007, an unidentified correctional officer planted a weapon in his cell. (Id. at ¶ 38A.) On December 27, 2007, Plaintiff surrendered the weapon and Defendant Reeves ordered it removed from Plaintiff's front pocket where it was in a sealed envelope and ordered Plaintiff to be held in a holding cell. Plaintiff was in the holding cell for four and one half hours without drinking water or a toilet. (Id. at ¶ 38B-D.) Defendant Reeves charged Plaintiff with possession of a weapon and Plaintiff was found guilty. (Id. at ¶ 38J.) Plaintiff was housed in a bitterly cold cell from December 27, 2007, to May 19, 2008, and denied extra clothing and blankets and heat. (Id. at ¶¶ 38F, 38I.) Plaintiff requested extra clothing and blankets. All officers referred the requests to Defendant Reeves, who denied them. (Id. at ¶ 38G.)

**C.    Statement of Undisputed Facts**

1.    Defendant Reeves was a correctional sergeant employed with the California Department of

1    Corrections and Rehabilitation for over twenty five years.[4] (Reeves Dec. ¶ 1, ECF No. 74-5.)

2    2.    Defendant Reeves worked as a correctional sergeant in the ASU at PVSP for over ten years.

3    (Id. at ¶ 2.)

4    3.    In 2007, one of the inmates in the PVSP ASU was Plaintiff. (Sec. Am. Compl. ¶ 24; Reeves

5    Dec. at ¶ 2.)

6    4.    During 2007, the population of the ASU at PVSP ranged between 100 and 180 inmates. (Id.

7    at ¶ 3.)

8    5.    Defendant Reeves was not familiar with Plaintiff prior to his August 2007 transfer into the

9    PVSP ASU.  (Id.; Plaintiff's Depo. at 61:1-5.)

10    6.    On September 19, 2007, at approximately 7:40 in the morning, inmate Abreau (H-16924)

11    informed Defendant Reeves that he had been raped by his cell mate, Plaintiff. (Reeves Dec.

12    ¶ 4.)

13    7.    Per established operational procedures, their cell, ASU 182, was sealed as a crime scene.

14    Investigative Services Unit ("ISU") staff were contacted to conduct an investigation pursuant

15    to the protocols established under the Prison Rape Elimination Act. (Id.)

16    8.    After allegations that a rape had been committed, both inmate Abreau and Plaintiff were

17    placed in separate holding cells until ISU staff arrived and collected evidence per established

18    procedures. (Id. at ¶ 5.)

19    9.    Plaintiff was not allowed to drink, wash, gargle, shower or use the restroom until after

20    evidence was collected so as to not contaminate or destroy any possible evidence. (Id.)

21    10.   During the investigation by ISU, photographs of cell ASU 182 were taken and evidence was

22    collected from the cell and the inmates. (Id. at ¶ 6.)

23    11.   Both inmates were subsequently transported separately to Fresno Community Medical Center

24    for the Sexual Assault Examination Kit per the Prison Rape Elimination Act Protocol. (Id.)

25    12.   The rape charge was as a result of the allegations made by Plaintiff's cell mate Abreau. (Id.

26

27    _____

28    [4]Although Plaintiff purports to dispute the majority of the facts stated, he has failed to submit admissible evidence to bring the facts into dispute.

1     at ¶ 7.)

2  13.  Defendant Reeves took the initial report, but the actual investigation was handled by ISU,

3        the hospital forensic staff, and the District Attorney's office. (Id. )

4  14.  On December 27, 2007, Plaintiff appeared at a Classification Committee to determine his

5        appropriate housing and program needs. (Id. at ¶ 9.)

6  15.  During his review, Plaintiff advised the committee that he "had a weapon" in his jumpsuit

7        "that was planted in [his] cell by staff." (Id.)

8  16.  Upon Plaintiff's announcement, Defendant Reeves removed a soft metal stationary fastener

9        measuring approximately three inches in length, one half inch in width and flattened at an

10       angle at one end. (Id.)

11 17.  This type of item is considered dangerous contraband if possessed by inmates in ASU. (Id.)

12 18.  Pursuant to the established procedures for the discovery of dangerous contraband on an ASU

13       inmate, Defendant Reeves instructed a correctional officer to escort Plaintiff to a holding cell

14       for an unclothed body search for further contraband. (Id. at ¶10.)

15 19.  Defendant Reeves also instructed a correctional officer to conduct a thorough search of

16       Plaintiff's cell (ASU 114) for an additional dangerous contraband.  No further contraband

17       was located. (Id.)

18 20.  Plaintiff was in the holding cell while these searches were completed. (Id. at ¶ 11.)

19 21.  Defendant Reeves issued Plaintiff a Rules Violation Report ("RVR") for the specific act of

20       Possession of Dangerous Contraband at the ICC. (Id. at ¶ 12.)

21 22.  Plaintiff was found guilty of this offense on February 1, 2008. (Id.)

22 23.  Plaintiff claims that he found the metal fastener in his cell after returning from a shower

23       almost three weeks prior to the committee incident. (Id. at ¶ 13.)

24 24.  Plaintiff has not alleged that Defendant Reeves put the contraband in his cell. (Id.; Plaintiff's

25       Depo 77:4-15, 78:4-16, 79:8-10.)

26 25.  After the search of Plaintiff's cell was conducted, his personal and state property were

27       collected by correctional officers and moved to another cell (ASU 159). (Reeves' Dec. at

28       ¶ 14.)

26.   Plaintiff was placed in a different cell to prevent the possibility of him obtaining additional dangerous contraband items from other inmates housed near him in that particular section of the building.  (Id. at ¶ 15.)

27.   There are air vents in each cell that provide all inmates with warm or cool circulating air to protect them from the elements of inclement outdoor weather year round.  (Id. ¶ 16.)

28.   Pursuant to institution policy and procedures, inmates are issued two pairs of boxer shorts, two t-shirts, one towel, two sheets, two wool blankets, two sets of thermal tops and bottoms, and a jumpsuit in their cell.  (Id. at ¶ 17; Plaintiff's Depo. at 103:9-11.)

29.   An inmate is allowed additional clothing and/or linens if they obtain documentation from their medical care provider demonstrating a valid need.  (Reeves' Dec. at ¶ 18.)

30.   Medical personnel make daily rounds to every cell in the building and Plaintiff could have obtained this documentation had it been necessary.  (Id..)

31.   Plaintiff did not request any medical documentation from any medical provider for additional clothing or linens.  (Id.; Plaintiff's Depo. at 101:21-102:12.)

32.   On September 19, 2007, Plaintiff had an altercation with his cell mate, Abreau, during which he punched inmate Abreau in the stomach.  (Plaintiff's Depo. at 49:20-50:12, 114:18-115:10.)

33.   It was after Plaintiff punched inmate Abreau that Abreau accused Plaintiff of rape.  (Id. at 50:14-51:3, 115:1-10.)

34.   Plaintiff admits that he hid the metal fastener he presented at the December 27, 2007, classification hearing in his cell from December 2, 2007, until the hearing.  (Id. at 80:7-17.)

35.   Plaintiff believes he has been the victim of retaliation by correctional staff at every institution in which he has been incarcerated following SVSP in 1998.  (Id. at 15:9-16:15, 22:20-24:6, 25:3-19, 27:19-28:9, 28:22-29:7, 30:24.)

36.   After the completion of the Rape Examination Kit at Fresno Community Medical Center, Plaintiff was allowed to use the restroom, drink water and eat lunch.  (Id. at 69:6-22.)

**D.     Defendant's Position**

Defendant argues that Plaintiff's claims are based on pure speculation and no evidence exists

7

1  to support the claim that Defendant Reeves retaliated against Plaintiff or subjected him to conditions

2  of confinement that violated the Eighth Amendment.  Alternately, Defendant Reeves argues he is

3  entitled to qualified immunity.

4       Defendant contends that Plaintiff's claims that Defendant Reeves retaliated against him by

5  fabricating rape charges because of grievances that he filed ten years prior to the incidents at issue

6  here are simply implausible, and there is no evidence to support Plaintiff's claims.  Further, Plaintiff

7  admits that he brought the metal fastener to the ICC in his jumpsuit pocket and that Defendant

8  Reeves did not put the fastener in his cell.  (Memorandum of Points and Authorities in Support of

9  Defendant Reeves' Motion for Summary Judgment 6, ECF No. 74-1.)  Once the metal fastener was

10  discovered, searching for additional contraband and reassigning Plaintiff to a different cell to prevent

11  contraband from passing between inmates is necessary to ensure the safety of the staff and other

12  inmates.  (Id. at 7.)

13       Plaintiff admits that he first met Defendant Reeves the morning that inmate Abreau accused

14  Plaintiff of raping him.  There is a significant break in the causal chain between the grievance filed

15  ten years prior and the rape charge.  Defendant Reeves was not aware of the prior grievances and had

16  no interactions with Plaintiff prior to being informed by inmate Abreau that Plaintiff had raped him.

17  In addition, Defendant Reeves' actions further a legitimate penological purpose.  Plaintiff admits that

18  his cell mate accused him of rape and such accusations must be investigated.  Plaintiff was removed

19  to the holding cell and not allowed to use the restroom or to drink water so that evidence would not

20  be contaminated.  (Id.)  Defendant Reeves claims that Plaintiff's speech has not been chilled.  (Id.

21  at 8.)

22       Defendant argues that Plaintiff's conditions of confinement claims should also fail.  Plaintiff

23  was placed in a holding cell on September 19, 2007, to investigate the allegation that he had raped

24  his cell mate.  Further, he was placed in a holding cell the second time for ninety minutes after being

25  found in possession of contraband, in order to search for further contraband.  Defendant contends

26  that Plaintiff did not ask for water or to use the restroom during the time he was in the holding cell.

27  (Id. at 13.)

28       Summary judgment on Plaintiff's claim that his cell was bitter-cold should be granted

8

because Plaintiff did not seek medical documentation to allow him to have additional clothing or blankets.  Plaintiff admits that there is no separate thermostat for the cell and does not know how it would be possible to manually control the temperature in the cell.  Plaintiff has produced no evidence that the cell is maintained in any manner differently than his other cells.  Plaintiff was moved to the cell to prevent any further contraband from being passed between inmates.  (Id.)

Finally, Defendant argues that he is entitled to qualified immunity.  (Id. at 13-14.)

### E.    Plaintiff's Position

Plaintiff alleges that Defendant Reeves had access to his central file and upon reviewing it discovered that Plaintiff had previously filed grievances and began a year long campaign of harassing Plaintiff in retaliation.[5]  (Opp. 10, ECF No. 9-10.)  Plaintiff states that Defendant Reeves hand picked inmate Abreau as his cell mate.  (Id. at 23.)  Further, Plaintiff alleges that housing him with inmate Abreau was inappropriate because Plaintiff is a Level II inmate and Plaintiff was told that inmate Abreau was a Level IV inmate.  Defendant Reeves was notified of this and still ordered them to be housed together.  (Id. at 37.)

Plaintiff claims that on September 19, 2007, inmate Abreau provoked Plaintiff to have a fight by having a bowel movement a minute prior to breakfast and then attempting to eat Plaintiff's breakfast.  (Id.)  After Plaintiff punched inmate Abreau in the stomach, inmate Abreau refused to speak with any officer other than Defendant Reeves.  (Id. at 12, 23.)  When Defendant Reeves arrived, inmate Abreau insisted that they speak privately.  Defendant Reeves immediately granted the request.  After speaking with inmate Abreau, Plaintiff claims that Defendant Reeves produced the false rape charge.  Plaintiff alleges that Defendant Reeves told Plaintiff, "I just made you a faggot."  "You raped your cellie."  (Id. at 12.)

Plaintiff alleges that Defendant Reeves was the reporting employee and attempts to distance himself by improperly delegating his authority to his immediate supervisor.  (Id. at 29-31; 41.) Defendant Reeves was the only officer involved in the discovery phase of the rape charge, and was

---

[5]In his opposition, Plaintiff attempts to raise the conduct of prison officials who conspired with Defendant Reeves to impede his discovery.  This issue has previously been addressed by the Court and Plaintiff's arguments are disregarded.  (ECF No. 82 at 34:1-13.)

aware that the rape charge was false. (Id. at 31.) Plaintiff claims that the improper delegation of the authority to write the RVR supports his claim that Defendant Reeves orchestrated the false rape charge. (Id.) Further, the fact that Defendant Reeves assigned inmate Abreau as Plaintiff's cell mate, and inmate Abreau would only speak with Defendant Reeves to report the incident, is evidence of the meeting of the minds to prove the conspiracy. (Id. at 33.)

Plaintiff contends that, since the alleged rape occurred at approximately 9:00 the previous evening and he had access to a toilet and water prior to having the incident reported, denying him access to the toilet and drinking water did not further a legitimate penological purpose. (Id. at 38.) Plaintiff also claims that the DNA evidence was not received by the DOJ until July 27, 2008, and argues that Defendant Reeves was responsible for the deficiencies in the investigation. (Id. at 44.)

Plaintiff claims that he did not report the planted weapon immediately, because he was concerned that Defendant Reeves would use the planting of the weapon to his advantage. (Id. at 45.) Plaintiff first drafted a habeas petition, and then surrendered the weapon on December 27, 2007. (Id. at 45-46.) Plaintiff states that the issuance of the false RVR was not based on legitimate safety concerns, but to punish Plaintiff for exercising his right to file grievances. (Id. at 48.)

Plaintiff alleges that Defendant Reeves was familiar with the placement of cell 159 and that it had two perimeter walls that caused it to be cold. Plaintiff claims this cell is commonly used to punish unruly inmates. Because of Defendant Reeves' hatred toward Plaintiff, he housed Plaintiff in cell 159. (Id. at 49.) Plaintiff states that his requests for extra clothing and blankets were denied per Defendant Reeves' orders. (Id. at 50.) Plaintiff contends that Defendant Reeves, knowing that it was winter and he would be subjected to the cold temperatures in cell 159, had Plaintiff placed in the cell without any heat coming through the ducts, and denied him additional clothing or blankets. (Id. at 59-60.)

Finally, Plaintiff argues that Defendant Reeves is not entitled to qualified immunity. (Id. at 61-76.)

### F.   **Defendant's Reply**

Defendant claims that Plaintiff's opposition fails to comply with the Local Rules, and although Plaintiff's objection is lengthy, Plaintiff fails to present any evidence to support his claims.

1   (Reply 2, ECF No. 90.)  Plaintiff's claims are based upon speculation and he embellishes his claims

2   in the opposition, attempting to add new allegations against Defendant Reeves.  (Id. at 3.)

3        Defendant contends that the evidence submitted by Plaintiff to support his retaliation claim

4   is nothing more than speculative statements that lack foundation.  (Id. at 4.)  Defendant asserts that

5   he was following appropriate institutional policies and procedures and did not know of and disregard

6   an excessive risk to Plaintiff's health or safety.  Plaintiff attempts to support his conditions of

7   confinement claim with sham declarations with speculative scenarios as to how it might be possible

8   to control the temperature in the cell, without presenting any evidence that the temperature in cell

9   159 is different from any other cell in the unit.  (Id. at 5.)

10        The Court finds that Defendants have met their initial burden of informing the Court of the

11   basis for their motion, and identifying those portions of the record which they believe demonstrate

12   the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish

13   that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus., 475 U.S.

14   at 586, 106 S. Ct. at 1356 (1986).

15        **G.**    **Defendant's Evidentiary Objections**

16        Any party may object to the other's evidence on the ground that it "cannot be presented in

17   a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  As long as the requirements

18   of Rule 56 are satisfied, the evidence submitted is not required to be in a form that would be

19   admissible at trial.  Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001).

20        In his reply, Defendant contends that Plaintiff's declarations are sham declarations that are

21   self serving and unsupported by corroborating evidence. (Defendant Reeves Objections to Plaintiff's

22   Multiple Declarations and Exhibits 8-9, ECF No. 90-1.)  Defendant objects to Exhibits A though

23   UU, attached to Plaintiff's opposition to the motion for summary judgment, on the grounds that they

24   lack authentication and proper foundation and are not relevant.  (Id. at 9.)  Further, Plaintiff objects

25   to Plaintiff's objection on the ground that the majority of the documents submitted are irrelevant and

26   many documents are submitted in both the objection and the declaration.  Defendant contends that

27   Plaintiff has submitted this largely repetitive document for the purpose of harassment of defense

28   counsel and to increase the cost of litigation for Defendant Reeves by serving voluminous,

1  unnecessary documents and requests that they be stricken from the record.  (Defendant Reeves'
2  Objection to Plaintiff's Separate Statement of Disputed Facts 20, ECF No. 90-3.)

### 1.    Relevance

4  Given the Court's duty to determine whether there exists a genuine dispute as to any *material*
5  fact, an independent objection to evidence as irrelevant is both unnecessary and unhelpful.  E.g.,
6  Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09-1799 WBS CMK, 2011 WL
7  1807384, at *3 (E.D.Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09-690 WBS GGH, 2010
8  WL 2511175, at *6 (E.D.Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S-06-2916 GEB KJM P,
9  2009 WL 3055222, at *3 (E.D.Cal. Sept. 21, 2009); Burch v. Regents of the University of California,
10  433 F.Supp.2d 1110, 1119 (E.D.Cal. Jun. 5, 2006).  Defendants' objections on relevancy grounds
11  are therefore disregarded.

### 2.    Authentication and Foundation

13  Federal Rule of Evidence 901(a) requires "authentication or identification as a condition
14  precedent to admissibility."  A foundation must be laid "by evidence sufficient to support a finding
15  that the matter in question is what its proponent claims" before evidence may be admitted.
16  Fed.R.Evid. 901(a).  Unauthenticated documents cannot be considered in a motion for summary
17  judgment.  Las Vegas Sands, LLC v. Nehme.  632 F.3d 526, 532 (9th Cir. 2011) (citing Orr v. Bank
18  of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002)) (quotation marks omitted).  Therefore,
19  lack of proper authentication is an appropriate objection where a document's authenticity is
20  genuinely in dispute.

21  "An inquiry into authenticity concerns the genuineness of an item of evidence, not its
22  admissibility," Orr, 285 F.3d at 776, and documents may be authenticated by review of their contents
23  if they appear to be sufficiently genuine, Las Vegas Sands, LLC, 632 F.3d at 533 (citing Orr, 285
24  F.3d at 778 n.24) (quotation marks omitted).  No suggestion was made that these documents are not
25  what they purport to be.

26  The large majority of the documents submitted by Plaintiff are irrelevant and will therefore
27  be disregarded in determining Defendant's motion for summary judgment.  The potentially relevant
28  prison documents are: Exhibit I, Confidential Information Disclosure Form dated August 29, 2007,

1   (ECF No. 82 at 143); Exhibit L, Administrative Placement Notice, which is largely illegible,[6] (id.

2   at 157); Exhibit M, Administrative Segregation Unit/Security Housing Unit Double Cell Review,

3   dated September 14, 2007, (id. at 159); Exhibits N, O, P, T, U, and W Crime Incident Reports, (id.

4   at 161-62, 164, 166-67, 177-78, 180, 184); Exhibit Q, CDCR Prison Rape Elimination Policy Post

5   Sexual Assault Information, (id. at 169-171); Exhibits S and V, Medical Report of Injury, dated

6   September 19, 2007, (id. at 175, 182); Exhibit X, Inmate/Parolee Appeal Form, dated September 28,

7   2007, (id. at 186-ECF No. 82-1 at 2); Exhibit Z, Rules Violation Report, dated September 29, 2007,

8   (id. at 6); Exhibit AA, Initial ASU Review, dated September 27, 2007, (id. at 9); Exhibit JJ, Rules

9   Violation Report, dated January 1, 2008, (id. at 97-103); Exhibits KK and LL, Inmate/Parolee

10  Appeal Forms, dated February 13, 2008, and January 9, 2008, (id. at 106-115, 117-130); and Exhibit

11  SS, Prison Medical Records, (id. at 178-81).

12        The appearance, contents, and substance of these documents allows the Court to easily

13  conclude that the documents have been authenticated by their distinctive characteristics and that they

14  are what they appear to be.  If Defendants genuinely disputed the authenticity of any of these

15  documents, they could have made specific objections as to those documents.  Notably, they did not

16  and their bare objection to Plaintiff's exhibits for lack of proper authentication is overruled.  Fed.

17  R. Evid. 901(b)(4); Las Vegas Sands, LLC, 632 F.3d at 533.

18              **3.    Plaintiff's Declarations and Exhibits**

19        Defendant contends that Plaintiff's affidavits are sham affidavits provided for the sole

20  purpose of creating a genuine issue of material fact.  Affidavits or declarations used in support of

21  or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts

22  that would be admissible in evidence, and show that the affiant or declarant is competent to testify

23  on the matters stated." Fed. R. Civ. P. 56(c)(4).  The sham affidavit rule arises when the declarant's

24  declaration contradicts earlier deposition testimony.  Nelson v. City of Davis, 571 F.3d 924, 927 (9th

25  Cir. 2009); see Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir. 1991) (holding a

26  court may discount a "sham" declaration that "flatly contradicts" prior deposition testimony, and has

27

28        [6]A legible copy of Exhibit L is included with Plaintiff's Declaration.  (ECF No. 83 at 29.)

been provided for the sole purpose of creating a genuine issue of material fact.)  The underlying

rationale of the sham affidavit rule is that a party may not "manufacture a bogus dispute with *himself*

to defeat summary judgment."  Nelson, 571 F.3d at 928 (emphasis in original).

Although  Defendant  contends  that  Plaintiff's  declarations  contradict  his  deposition

testimony, pleadings, and grievances, he fails to point to any specific inconsistency.  In this instance,

Defendant has failed to show that Plaintiff's declarations contradict earlier deposition testimony and

the sham affidavit rule does not apply.  Accordingly, Defendant's objection is overruled.

The Court has reviewed the exhibits attached to Plaintiff's six declarations and finds that they

are either duplicative of the exhibits attached to his opposition or not relevant.  With the exception

of the legible copy of the administrative segregation placement notice (illegible as Exhibit L in

Plaintiff's opposition), and the diagram and National Weather Service response, (ECF No. 83 at 29,

172-175,), which Plaintiff references in his fifth declaration, the exhibits attached to Plaintiff's

declarations shall be disregarded.

**H.     Retaliation Claim**

**1.     Legal Standard**

It is well established that a prisoner has a right under the First Amendment to file a prison

grievance.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  A prisoner has a right to meaningful

access to the courts which includes the "broader right to petition the government for redress of his

grievances."  Silva v. Di Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011); Bradley v. Hall, 64 F.3d

1276, 1279 (9th Cir. 1995) (overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2,

121 S. Ct. 1475 n.2 (2001)).  Prison officials may not retaliate against prisoners for exercising their

right to file grievances.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

A viable claim of retaliation in violation of the First Amendment consists of five elements:

"(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108,

1114 (9th Cir. 2012); Brodheim, 584 F.3d at 1269.

A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against for exercising his constitutional rights, and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. Rhodes, 408 F.3d at 569. The burden is on the plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct. Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

## 2. **Discussion**

### a. **Causation**

To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct. Broadheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)) (internal punctuation omitted). To survive a motion for summary judgment on this element, a plaintiff need only set "forth evidence of a retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact" as to the defendant's intent. Broadheim, 584 F.3d at 1271 (quoting Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)).

Defendant argues that there is a significant time lapse between the incidents at issue in this action and the grievance which was filed in 1998, which Plaintiff claims is the basis for the retaliation. Plaintiff claims that Defendant Reeves would have looked through his central file in determining Plaintiff's placement in ASU and would have had access to his grievance history. Plaintiff states that, on the day Plaintiff was accused of raping his cell mate, Defendant Reeves told him that the "shit he pulled at Salinas Valley is going to be 'your ticket to hell.'" (ECF No. 14 at 10.) Further, it is clear from Plaintiff's complaint that he has continued to file grievances at each prison where he has been housed. There is a genuine issue of material fact regarding whether Defendant Reeves' conduct was due to Plaintiff's history of filing grievances.

### b. **Adverse Action**

"[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." Brodheim, 584 F.3d at 1269-70 (quoting Gomez v. Vernon, 255 F.3d 1118,

15

1127 (9th Cir. 2001)).  Plaintiff alleges that Defendant Reeves fabricated false rape and weapons charges against him.  These allegations are sufficient to allege adverse action in support of Plaintiff's retaliation claim.

### c.    Chilling Effect

Defendant argues that Plaintiff's speech has not been chilled as he continues to prolifically file writs, grievances, and appeals claiming that he has been retaliated against at each institution that he has been housed at for the grievance he filed in 1998.  Speech need not be completely silenced in order to be chilled, the correct inquiry is "whether an official's acts would chill or silence a person of ordinary firmness from further First Amendment activities."  Rhodes, 408 F.3d at 568-69 (citations omitted).

Plaintiff alleges that he was falsely accused of raping his cell mate and being in possession of a weapon subjecting him to being denied drinking water and a toilet, being housed in a bitterly cold cell, and denied adequate clothing and blankets.  Such conduct directed toward an inmate is sufficient to chill the speech of a person of ordinary firmness.

### d.    September 19, 2008, Rape Allegation

Plaintiff contends that Defendant Reeves orchestrated the rape allegation with inmate Abraeu on September 19, 2007, because Plaintiff filed a grievance against correctional officers at SVSP in 1998.  In support of his claim that Defendant Reeves orchestrated the false charge, Plaintiff alleges that Defendant Reeves inappropriately assigned inmate Abreau as his cell mate, immediately granted inmate Abreau's request for a private interview on the morning of September 19, 2007, after talking with inmate Abreau he told Plaintiff that "he had made Plaintiff a faggot," and had his supervisor prepare the RVR although Defendant Reeves was the discovering officer.

Due to enemy concerns on the yard where Plaintiff was housed, he was transferred to the ASU on August 29, 2007.  (ECF No. 83 at p. 16, ¶¶ 4, 5.)  On September 14, 2007, inmate Abreau was placed in the cell with Plaintiff and a double cell review form was signed.  (Id. at ¶ 9; ECF No. 82 at 159.)  On the morning of September 19, 2007, after Plaintiff punched inmate Abreau in the stomach, Abreau informed Defendant Reeves that he had been raped by Plaintiff.  (UF 6; ECF No. 82 at 16.)  Plaintiff asserts that after speaking with inmate Abreau, Defendant Reeves approached

1   him and stated, "You like going after officers." "I just made you a faggot." "You raped your cellie."

2   "I'll make sure you get time for this." "That shit you pulled at Salinas Valley is now going to be

3   your 'ticket to hell.'" (ECF No. 14 at 10.)

4       While Defendant Reeves presents evidence that there is a legitimate penological purpose for

5   the investigation that follows after an inmate is accused of raping his cell mate, he does not address

6   Plaintiff's allegations regarding the statements allegedly made following his interview with inmate

7   Abreau, specifically Plaintiff's allegation that Defendant Reeves told Plaintiff, "I just made you a

8   faggot." Viewing the facts in the light most favorable to Plaintiff, a material issue of fact exists as

9   to whether Defendant Reeves conspired with inmate Abreau and reported a false rape charge because

10  Plaintiff filed inmate grievances.

11      Defendant Reeves has presented evidence that investigating the rape charge and refusing to

12  allow an inmate to drink or use the restroom prior to the completion of the sexual assault

13  investigation does reasonably advance a legitimate correctional goal.  However, in this instance,

14  there is a material issue of fact as to whether Defendant Reeves was aware that the rape charge was

15  fabricated and therefore no legitimate penological interest existed.  Accordingly, the Court cannot

16  determine, as a matter of law, that the investigation of the charges reasonably advanced a legitimate

17  penological goal.

18      Defendant Reeves' motion for summary judgment on the claim that on September 19, 2007,

19  he falsely reported that Plaintiff had raped his cell mate because Plaintiff filed grievances is denied.[7]

20              e.    **December 27, 2007, Possession of Weapon Allegation**

21      Plaintiff admits that he found a weapon in his cell on December 2, 2007. (ECF No. 83 at p.

22  103, ¶¶ 9, 12.) Rather than turning the weapon over to prison officials when it was found, Plaintiff

23  kept the weapon until December 27, 2007. (Id. at ¶¶ 15, 16.) During a review, Plaintiff advised the

24  review committee that he "had a weapon" in his jumpsuit "that was planted in [his] cell by staff."

25  (UF 15.) Defendant Reeves removed a soft metal stationary fastener measuring approximately three

26  inches in length, one half inch in width and flattened at an angle at one end.  (UF 16.)  This type of

27

28      [7]The Court has considered Plaintiff's additional arguments and declines to address them based on the denial of Defendant's motion for summary judgment.

item is considered dangerous contraband if possessed by inmates in ASU. (UF 17.) Pursuant to the established procedures for the discovery of dangerous contraband on an ASU inmate, Defendant Reeves instructed a correctional officer to escort Plaintiff to a holding cell for an unclothed body search for further contraband. (UF 17.)

Plaintiff admits that Defendant Reeves was not in the building at the time that he alleges he saw a correctional officer enter his cell and plant the weapon. (Plaintiff's Depo 77:7-79:10.) Plaintiff claims that while being questioned by Defendant Reeves about the weapon, Defendant Reeves told him to identify the officer who planted the weapon and used a feminine pronoun. Plaintiff argues that this statement shows that Defendant Reeves knew who planted the weapon in his cell and was involved in having the weapon planted. Even if Defendant Reeves used a female pronoun while questioning Plaintiff on who planted the weapon in cell, this is insufficient to create the inference that Defendant Reeves had the weapon planted in Plaintiff's cell. The existence of a scintilla of evidence is insufficient to establish a material issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Plaintiff has failed to produce any evidence linking Defendant Reeves to the weapon he alleges was planted in his cell.

Plaintiff states that Defendant Reeves decided to file the RVR while at the peak of his "rancorously induced anger" and the timing of his decision to draft the RVR shows his intent to retaliate against Plaintiff. While Plaintiff submits his opinion regarding the timing of Defendant Reeves decision to file the RVR, it is unsupported by any evidence. Neither Defendant Reeves anger at finding Plaintiff in possession of the weapon nor his aggressive manner in attempting to question Plaintiff while investigating his possession of the weapon lead to the inference that Defendant Reeves wrote the RVR because Plaintiff filed grievances.

Plaintiff argues that he should not be charged with possession of the planted weapon. Had Plaintiff immediately turned the weapon over to prison officials there may have been merit to this argument. However, in this instance, Plaintiff admits that he found the contraband on December 2, 2007, and kept it in his possession until December 27, 2007. Further, while Plaintiff states that the fact that he voluntarily turned the weapon over negates any wrongdoing on his part, regardless of how Plaintiff came to possess the weapon or why he did not turn it over to prison officials, he was

in possession of the weapon for over three weeks and was subsequently found guilty of possession of contraband.  Since Plaintiff had the weapon in his possession for three weeks the RVR was not false.

Plaintiff argues that the security of the institution was not implicated because by filing his habeas petition the prison was notified that he was in possession of the weapon; he would have turned the weapon over had he been asked about it; and he did not leave the cell while he possessed the weapon.  Even if the Court was to find that notifying prison officials was sufficient to excuse his possession of the weapon for three weeks, filing a writ of habeas corpus is insufficient to notify prison officials that Plaintiff was in possession of the contraband.  Nor does the fact that Plaintiff did not leave his cell make the weapon less of a threat to the security of the institution.  The soft metal stationary fastener measuring approximately three inches in length, one half inch in width and flattened at an angle at one end is considered dangerous contraband if possessed by inmates in ASU.  (UF 16, 17.)

Finally, the Court finds that although Plaintiff alleges that Defendant Reeves wrote the RVR because he filed grievances, the undisputed evidence shows that Defendant Reeves filed the RVR because Plaintiff was in possession of a weapon.  Plaintiff's protected activity was not the substantial or motivating factor behind the filing of the RVR.  Broadheim, 584 F.3d at 1271.  No material issues of fact exist and Defendant Reeves is entitled to summary judgment on the claim that he filed a false RVR report on December 27, 2007, in retaliation for Plaintiff filing grievances.

## I.   **Deliberate Indifference**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S. Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that

mark the progress of a maturing society violate the Eighth Amendment. <u>Morgan</u>, 465 F.3d at 1045 (quotation marks and citations omitted); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737, 122 S. Ct. 2508 (2002); <u>Rhodes</u>, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. <u>E.g.</u>, <u>Farmer</u>, 511 U.S. at 847; <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1151-52 (9th Cir. 2010); <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Morgan</u>, 465 F.3d at 1045; <u>Johnson</u>, 217 F.3d at 731; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

Deliberate indifference requires a showing that "prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety and that there was no "reasonable justification for the deprivation, in spite of that risk." <u>Thomas</u>, 611 F.3d at 1150 (quoting <u>Farmer</u>, 511 U.S. at 844. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim." <u>Johnson</u>, 217 F.3d at 731.

### 1.   <u>Denial of Water and Toilet</u>

Plaintiff alleges that he was placed in a holding cell and denied water and a toilet for five and one half hours on September 19, 2007, and four and one half hours on December 27, 2007. The Ninth Circuit has recognized "that toilets can be unavailable for some period of time without violating the Eighth Amendment. <u>Johnson</u>,217 F.3d at 733.

In this instance, the Court finds that denying Plaintiff access to a toilet and water for five and

one half hours on one occasion and four and one half hours on a separate occasion, while he was kept in a holding cell, are not sufficient to rise to the level of a sufficiently serious deprivation to violate the Eighth Amendment.  See Hartsfield v. Vidor, 199 F.3d 305, 310 (6th Cir. 1999) (denial of water and bathroom for two eight hour periods on two days not cruel and unusual punishment); Schilling v. TransCor America, LLC, No. 3:08-cv-00941-SI, 2012 WL 3257659, *9 (N.D.Cal. Aug. 8, 2012) (restricting bathroom use to every three and one half to four hours during a twenty four hour transport does not impose a constitutional deprivation); Gerst v. Arpaio, No. 2:12-cv-01353-PHX-RCB (JFM), 2012 WL 3228838, *4 (D.Ariz. Aug. 6, 2012) (denial of air conditioning, water, and use of bathroom for three hours not sufficiently serious deprivation); Santos v. Corrections Corp. of America, No. 2:11-cv-00630-PHX-JAT (MEA), 2011 WL 1375158, *2-3 (D.Ariz. April 12, 2011) (inmate denied use of bathroom for one and one half hours causing him to relieve himself in bucket is not sufficiently serious deprivation); Wilkins v. Ahern, No. 3:08-cv-01084-MMC (PR), 2008 WL 4542413, *6 (N.D.Cal. Oct. 6, 2008) (housing in cell with clogged toilet for six hours, without a mattress for twelve hours, and a filthy toilet for forty-eight hours does not rise to an Eighth Amendment violation); cf Hope, 536 U.S. at 738, 122 S. Ct. at 2514-15 (finding claim where defendants knew there was a risk of substantial physical harm, unnecessary pain from handcuffing inmate to hitching post for seven hour period, unnecessary exposure to the sun after inmate was required to remove his shirt, prolonged thirst and taunting by guard who spilled water nearby, and deprivation of bathroom breaks that risked discomfort and humiliation).

Although Plaintiff alleges that he suffers from foot pain and takes medication for abdominal cramping and was denied his medication for the condition, there is no evidence to show that Defendant Reeves was aware that Plaintiff suffered from any medical condition that put him at a risk of harm from being placed in the holding cell without water or toilet access for the brief periods at issue here.  Finally, nothing in the record demonstrates that Plaintiff suffered any substantial harm from the denial of water and toilet use on these two occasions.

No material issues of fact exist and summary judgment is granted on the claim that Defendant Reeves was deliberately indifferent by denying Plaintiff water and toilet use for five and one half hours on September 19, 2007, and four and one half hours on December 27, 2007.

### 2.   Housing in Cell ASU 159

Plaintiff alleges that Defendant Reeves housed him in a bitterly cold cell from December 27, 2007, until May 19, 2008.  Defendant argues that cell 159 is kept at the same temperature as all other cells in the building and the temperature is not separately controlled in individual cells.  Plaintiff states that during the time he was housed in cell 159, the vents in the cell were closed and the vents produced no heat in the cell.  Further, Plaintiff states that in February of 2008, he had a half pint carton of milk in his cell that remained cold for seven days and a salad that stayed crisp for two days.

Defendant Reeves argues that he has been at the institution for over sixteen years and has no knowledge that cell 159 is different from any other cell in the unit.  Plaintiff contends that because Defendant Reeves has been at the institution, he is aware that cell 159 is cold and that unruly inmates are routinely placed in cell 159 to punish them.  Plaintiff also presents evidence that the outside temperatures dropped to the thirties and forties during the time he was confined in cell 159.  A material issue of fact exists regarding the temperature in cell 159 and whether Defendant Reeves knowingly placed Plaintiff in cell 159 to subject Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.  Defendant Reeves is not entitled to summary judgment on Plaintiff's claim that Defendant Reeves placed him in a bitterly cold cell as punishment.

### 3.   Denial of Blankets and Clothing

Plaintiff claims that he requested additional blankets and clothing from Defendant Reeves and Defendant Reeves refused to provide them.  Defendant Reeves states that he does not remember Plaintiff asking him for blankets or clothing, but Plaintiff could have received additional blankets and clothing by requesting documentation from his medical providing showing that he had a valid need.  However, if Defendant Reeves knew that Plaintiff was in need of additional clothing and blankets due to the cell being bitterly cold, regardless of whether there was medical documentation, the failure to provide adequate clothing and blankets would exhibit deliberate indifference. Material issues of fact exist, and Defendant Reeves is not entitled to summary judgment on Plaintiff's claims that he was denied blankets and warm clothing while housed in cell 159.

### J.   Qualified Immunity

Finally, Defendant Reeves argues that he is entitled to qualified immunity.  The doctrine of

1  qualified immunity protects government officials from civil liability where "their conduct does not

2  violate clearly established statutory or constitutional rights of which a reasonable person would have

3  known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Harlow v.

4  Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).   Qualified immunity protects "all but

5  the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, __ U.S. __,

6  131 S. Ct. 2074, 2085 (2011) (citations omitted).   To determine if an official is entitled to qualified

7  immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151,

8  2155 (2001) overruled in part by " Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808.   The court

9  determines if the facts as alleged state a violation of a constitutional right and if the right is clearly

10  established so that a reasonable official would have known that his conduct was unlawful. Ashcroft,

11  131 S. Ct. at 2083.   This does not require that the same factual situation must have been decided, but

12  that existing precedent would establish the statutory or constitutional question beyond debate. Id.;

13  Nelson v. City of Davis, 685 F.3d 867, 884 (9th Cir. 2012).   "The linchpin of qualified immunity is

14  the reasonableness of the official's conduct." Rosenbaum v. Washoe County, 654 F.3d 1001, 1006

15  (9th Cir. 2011).

16         The inquiry as to whether the right was clearly established is "solely a question of law for the

17  judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro.

18  Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)).   A district court is "permitted to exercise their

19  sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

20  addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236,

21  129 S. Ct. at 818.

22         The right the official is alleged to have violated must be defined at the appropriate level of

23  specificity before the court can determine if it was clearly established. Dunn, 621 F.3d at 1200.   At

24  issue here is an inmate's right under the First Amendment to be free from retaliation due to filing

25  inmate grievances and the right not to be subjected to bitterly cold temperatures that amount to

26  inhumane conditions of confinement.   There is no need to consider the defense of qualified immunity

27  with respect to the claims that the Court has resolved in Defendant's favor on summary judgment.

28  Wilkie v. Robbins, 551 U.S. 537, 567 (2007).

1    As to the remaining claims, Defendant Reeves is not entitled to qualified immunity.  Viewing

2  the facts in the light most favorable to Plaintiff, Defendant Reeves conspired with inmate Abreau

3  to falsely accuse Plaintiff of rape because Plaintiff had filed inmate grievances.  It is clearly

4  established that prison officials may not punish inmates by retaliatory conduct.  Rhodes, 408 F.3d

5  at 570; Bruce, 351 F.3d at 1290; Pratt, 65 F.3d at 806.

6    Further, construing Plaintiff's Eighth Amendment claim in the light most favorable to

7  Plaintiff, he was housed in a bitterly cold cell and denied blankets and extra clothing by Defendant

8  Reeves from December 27, 2007, to May 19, 2008, as punishment.  Prison officials have a duty to

9  ensure that prisoners are provided adequate shelter and clothing.  Johnson, 217 F.3d at 731.  It is

10  clearly established that exposing an inmate to extreme cold for several months without providing

11  adequate blankets and clothing would violate the prohibition against cruel and unusual punishment.

12  See Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321, 2327 (1991) (low cell temperature at night

13  with failure to issue blankets produces deprivation of identifiable need for warmth); Johnson, 217

14  F.3d at 732-33 (exposing inmates to subfreezing temperatures for five to nine hours without adequate

15  protection is sufficiently serious to violate the Eighth Amendment); Keenan v. Hall, 83 F.3d 1083,

16  1090 (9th Cir. 1996) (inadequate airflow can violate the Eighth Amendment where it undermines

17  the health of an inmate); Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) (cell temperatures

18  near freezing at night may allege a constitutional violation).  Defendant Reeves motion for summary

19  judgment on the grounds of qualified immunity is denied.

20  **IV.**    **Conclusion and Order**

21      1.      Plaintiff's motion to strike the declaration of Defendant Reeves, filed January 31,

22              2012, is DENIED;

23      2.      Defendant's motion for summary judgment is GRANTED IN PART AND DENIED

24              IN PART as follows:

25          a.      Defendant Reeves' motion for summary judgment on the claim that he falsely

26                  reported that Plaintiff raped his cell mate in retaliation for Plaintiff filing

27                  grievances in violation of the First Amendment is DENIED;

28          b.      Defendant Reeves' motion for summary judgment on the claim that

Defendant Reeves filed a false rule violation report on December 27, 2007, in violation of the First Amendment is GRANTED;

     c.     Defendant Reeves' motion for summary judgment on Plaintiff's claim that Defendant Reeves exhibited deliberate indifference by holding Plaintiff in a holding cell on September 17, 2007, and December 27, 2007, without water or a toilet in violation of the Eighth Amendment is GRANTED;

     d.     Defendant Reeves motion for summary judgment on Plaintiff's claim that Defendant Reeves was deliberately indifferent by having Plaintiff placed in a bitterly cold cell and denying warm clothing and blankets in violation of the Eighth Amendment is DENIED; and

     e.     Defendant Reeves motion for summary judgment on the ground of qualified immunity is DENIED.

IT IS SO ORDERED.

**Dated:**   **September 13, 2012**         **/s/ Barbara A. McAuliffe**
                                     UNITED STATES MAGISTRATE JUDGE